UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                            Plaintiff,

                       v.

ALLEN ABNEY,

                       Defendant.

_____

             DECISION & ORDER and
             REPORT & RECOMMENDATION

             04-CR-6164L

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated February 9, 2006, all pre-trial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 100).

Defendant Allen Abney (hereinafter "Abney") is charged in one count of a two-count indictment. Specifically, Count One charges Abney with possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and (e) and 2. As alleged in the indictment, on January 14, 2004, Abney possessed a 9mm Luger caliber, Walther Model P38 double action pistol, and ammunition. (Docket # 1).

Currently pending before this Court for Decision and Order is Abney's motion for disclosure of the identity of the government's confidential informant. Also before this Court for Report and Recommendation is Abney's motion to suppress statements made following his arrest

on November 8, 2004.[1]  (Docket ## 48, 87).  The government opposes both motions.  (Docket ## 90, 97).


## FACTUAL BACKGROUND

On December 5, 2005, an evidentiary hearing was conducted on Abney's motion to suppress statements.  Special Agents James Lewer and Brian Pelletier of the Bureau of Alcohol, Tobacco and Firearms ("ATF") testified on behalf of the government.  No witnesses were called on behalf of the defense.

According to the credible testimony offered by the agents, this Court finds the following.  At some time prior to November 8, 2004, Special Agent Lewer traveled to Charlotte, North Carolina in order to execute a federal arrest warrant for Abney.  The warrant charged Abney with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  (Tr. 4-5).[2]  At approximately 8:15 p.m. on November 8, 2004, Lewer, with the assistance of Special Agent Pelletier and other agents from the Charlotte, North Carolina office went to Abney's place of employment, Consumer Debt Management.  (Tr. 5, 37).  Lewer initially spoke with Abney's supervisor, who introduced Lewer to Abney.  (Tr. 6).  Lewer then identified himself to Abney

---

[1]  Abney's omnibus motions also sought, *inter alia*, discovery and inspection, a bill of particulars, *Brady* material, *Jencks* material, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, the preservation of rough notes, severance, joinder in the motions of co-defendants, dismissal of the indictment, an audibility hearing, suppression of any identification, *in-camera* review of pre-sentence reports for government witnesses, inspection of jury lists and notice pursuant to Federal Rule of Civil Procedure 12(b)(4). (Docket ## 48, 87).  An oral Report and Recommendation was issued by this Court on November 4, 2005, recommending the denial of Abney's motions to dismiss the indictment.  (Docket # 92).  That recommendation was thereafter adopted by the District Court on December 21, 2005.  (Docket # 95).  Each of Abney's remaining requests was either resolved by the parties or decided in open court by the undersigned on November 4, 2005.  (Docket ## 93, 94).

[2]  The transcript of the suppression hearing conducted before this Court on December 5, 2005, shall hereinafter be referenced as "Tr. __."  (Docket # 96).

and asked him to step into a conference room.  Once in the room, Lewer displayed his credentials

and advised Abney that he was under arrest.  (Tr. 6, 16, 37).  Lewer specifically informed Abney

that he was being charged with a federal violation for being a felon in possession of a firearm.

Lewer also indicated to Abney that he would speak with him further after they left the facility.

(Tr. 6).

       Once Abney had been removed from the office, he was transferred by Pelletier to

an interview room in the Charlotte police station.  While Abney was being transported, Lewer

went to Abney's residence and spoke with his fiancee.  (Tr. 6).  After speaking with Abney's

fiancee, Lewer returned to the Charlotte office to interview Abney.  (Tr. 7).  Lewer entered the

interview room with Pelletier at approximately 9:30 p.m., approximately one hour after Abney's

arrest.  (Tr. 7).

       After entering the interview room, Lewer removed the handcuffs that had been

restraining Abney and asked him whether he needed to use the restroom or whether he wanted a

drink of water, which Abney declined.  (Tr. 8, 39).  Lewer then explained the charge pending

against him.  (Tr. 8, 39).  Following that explanation, Lewer produced a standard ATF written

*Miranda* form and read the rights to Abney verbatim.  (Tr. 8-9, 40; G.Ex. 1).  Specifically, that

form reads:

> You must understand your rights before we ask you any questions.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court, or other
> proceedings.
>
> You have the right to talk to a lawyer for advice before we question
> you and to have him/her with you during questioning.

3

> If you cannot afford a lawyer and want one, a lawyer will be appointed
> for you by the court.  If you decide to answer questions now without a
> lawyer present, you will still have the right to stop questioning at any
> time.  You also have to right to stop the questioning at any time until
> you talk to a lawyer.

(G.Ex. 1).  After reading the rights, Lewer asked Abney whether he would sign the form

acknowledging that he had been advised of his rights.  (Tr. 9-10, 42).  Abney responded by

indicating that he did not want to sign any documents.  Lewer then stated to Abney that he was

not required to sign the form, but asked him whether he would do so.  Abney again refused to

sign the form.  At that point, Lewer asked Abney whether he understood his rights, and Abney

responded affirmatively.  Lewer further asked Abney whether he wanted to talk about the

investigation, and Abney indicated that he did.  (Tr. 10-11, 42-43).

Lewer proceeded to interview Abney for approximately two hours.  During the

interview, Lewer verbally reviewed Abney's statement with him two times.  As he began to go

through the statement for a third time, Lewer started to record the statement in writing "line for

line" as he was talking to Abney.  (Tr. 11, 14).  Abney reiterated that he did not want to sign a

statement.  As a result, Lewer stopped writing.  (Tr. 11-12).

According to the testimony of both Lewer and Pelletier, at no time during the

interview did Abney indicate that he wanted to stop talking, nor did he request the assistance of

counsel.  (Tr. 12-13, 43-44).  To the contrary, at the conclusion of the questioning, Abney

indicated to the agents that he had information that might be of interest to them and asked

whether they could "help him out."  (Tr. 50).  Lewer responded by advising Abney that he could

not make any promises, but that any cooperation would be made known to the United States

Attorney's office and to the court.  (Tr. 50).  The interview concluded at approximately 11:30

p.m.  (Tr. 44, 50).


## DECISION AND ORDER

As noted above, Abney seeks disclosure of the identity of, and other information

concerning, the government's confidential informant.  (Docket ## 48, 87).  The government

opposes the motion on the grounds that immediate disclosure would unduly compromise the

informant's safety.  (Docket ## 90, 97).

The disclosure of a confidential informant's identity is within the sound discretion

of the district court.  *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991).  The government

generally is not required to disclose the identity of confidential informants.  *Roviaro v. United*

*States*, 353 U.S. 53, 59 (1957).  In order to obtain such disclosure, the defendant must show that

without it, he "will be deprived of a fair trial."  *United States v. Fields*, 113 F.3d 313, 324 (2d

Cir.), *cert. denied*, 522 U.S. 976 (1997); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir.

1988) (defendant entitled to identity of confidential informant only upon showing that it is

material to the defense), *cert. denied*, 489 U.S. 1089 (1989).  A defendant's mere suggestion that

disclosure will assist in the defense of the case is insufficient.  *United States v. Fields*, 113 F.3d

at 324.  "[T]he district court must be satisfied, after balancing the competing interests of the

government and the defense, that the defendant's need for disclosure outweighs the government's

interest in shielding the informant's identity."  *Id.* (citing *Roviaro v. United States*, 353 U.S. at

62).  Such a need is established, according to the Second Circuit, "where the informant is a key

5

witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Saa*, 859 F.2d at 1073.

　　　　　　　　In the instant matter, Abney has failed entirely to show how disclosure of the informant's identity will be material to his defense. *See United States v. Flaharty*, 295 F.3d 182, 202 (2d Cir. 2002) ("speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden").  Indeed, upon review of the record in this matter, including the transcript of the evidentiary hearing conducted before this Court, I find no mention of the confidential informant's involvement in the investigation of the charges pending against Abney.  Because it is Abney's burden to demonstrate that disclosure of the informant's identity is essential to his defense, *see id.*, this dearth of information counsels in favor of preserving the confidentiality of the informant's identity.

　　　　　　　　In any event, the government has advised the Court and defense counsel that it intends to call the confidential informant as a witness at trial.  (Docket # 97 at 3).  Pursuant to the Jencks Act, 18 U.S.C. § 3500, the government is required to disclose relevant information about testifying witnesses.  Although such disclosure is not required until after the witness has testified, the government has agreed to disclose all *Jencks* material either three weeks before trial or during the pre-trial conference, whichever occurs earlier.  (Docket # 93).  Thus, Abney will know the identity of the informant, and other relevant information about him or her, in advance of trial so that he may use it to prepare his defense.  Thus, because Abney has shown no particularized need for disclosure, the government's intention to call the informant at trial obviates the need for the Court to order immediate disclosure of his or her identity.  *See United States v. Murgas*, 967 F. Supp. 695, 712 (N.D.N.Y. 1997) (pre-trial disclosure of informant's identity was unnecessary in

view of the government's intention to call informant as witness at trial); *United States v. Leonard*, 817 F. Supp. 286, 302 (E.D.N.Y. 1992) ("[b]ased on the government's intention to call informant at trial, disclosure of the confidential informant's identity is not warranted"); *United States v. Valerio*, 737 F. Supp. 844, 846 (S.D.N.Y. 1990) (denying immediate disclosure of informant's identity because government indicated that informant would testify at trial); *see also DiBlasio v. Keane*, 932 F.2d at 1043 (requiring disclosure of informant's identity, or in the alternative, permitting the government to call informant as witness).  It is therefore the decision of this Court that Abney's motion for disclosure of the identity of the government's confidential informant is denied.

## REPORT AND RECOMMENDATION

Abney also moves to suppress statements he made on November 8, 2004, during the interview in Charlotte, North Carolina with Special Agents Lewer and Pelletier.  Abney argues that suppression is warranted because the statements were obtained in violation of his rights under the Fifth and Sixth Amendments to the Constitution.[3]  (Docket ## 48, 87, 99).

A. **Abney Waived his Fifth Amendment Rights**:  Abney argues that he did not knowingly and voluntarily waive his Fifth Amendment rights prior to making the statements at issue.  (Docket ## 87, 99).  It is, of course, well-settled that statements made during custodial

---

[3]  Abney's original motion papers also argued, without explanation that his statements were obtained in violation of his Fourteenth Amendment rights.  The Fourteenth Amendment provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  Abney was arrested by federal ATF agents pursuant to an indictment returned by a federal grand jury.  (Docket # 1).  Abney has not explained the basis for his belief that the Fourteenth Amendment has been violated, and, considering the record before it, this Court rejects Abney's summary constitutional claim.

interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived those rights. *Id.* at 444.

Here, the government does not appear to contest that Abney was in custody during the interview with Lewer and Pelletier. Rather, the question is whether Abney validly waived his *Miranda* rights prior to providing the statements. To establish a valid waiver, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

The record before this Court, including the testimony of Special Agents Lewer and Pelletier, demonstrates that Abney was advised of his *Miranda* rights and voluntarily agreed to waive them. Specifically, Abney first encountered the agents at his place of employment. Abney was introduced to Lewer by his supervisor and directed into a conference room. (Tr. 5-6, 37). Once in the room, Lewer displayed his ATF credentials and advised Abney that he was under arrest based upon a federal warrant charging him with being a felon in possession of a weapon. (Tr. 6, 16, 37). Abney was thereafter transferred to the police station, where he was placed in an interview room. (Tr. 7).

Approximately one hour after the initial arrest, Lewer and Pelletier entered the interview room for the purpose of questioning Abney. (Tr. 7). When they entered the room,

8

Lewer asked Abney whether he needed to use the restroom or whether he wanted a drink of water, which Abney declined.  (Tr. 8, 39).  Lewer then explained to Abney the charge pending against him.  (Tr. 8, 39).  Following that explanation, Lewer advised Abney of his *Miranda* rights by reading them verbatim from an ATF *Miranda* form, which I find satisfied the requirements of *Miranda*.  (Tr. 8, 40; G.Ex. 1).  Abney was specifically advised that he had the right to remain silent and that anything he said could be used against him.  He was also advised that he had the right to talk to an attorney and that if he could not afford an attorney one would be appointed to him.  Finally, Abney was advised that if he agreed to answer the agents' questions, he could terminate the interview at any time, and could consult with an attorney.  (G.Ex. 1).  Although Abney refused to sign the *Miranda* form acknowledging that he had been advised of his rights, Lewer asked him whether he understood his rights and whether he wanted to talk about the investigation.  Abney responded affirmatively to both questions.  (Tr. 9-11, 42-43).

Following Abney's waiver of his *Miranda* rights, Lewer proceeded to interview him.  Pelletier was also present in the room throughout the interview, but he did not ask any questions.  (Tr. 44).  Lewer initially reviewed Abney's statement with him twice, and then, while discussing it for a third time, Lewer began to reduce the statement to writing on a line-by-line basis.  (Tr. 11).  After Lewer had written approximately one-half of a page, Abney reiterated that he did not want to sign anything.  As a result, Lewer stopped writing and continued the interview verbally.  (Tr. 11-13).

The entire interview lasted approximately two hours.  Both Lewer and Pelletier testified that at no time during the interview did Abney indicate that he wanted to stop talking, nor did he ever request the assistance of counsel.  (Tr. 12-13, 43-44).  On this record, I find that

Abney knowingly and voluntarily waived his *Miranda* rights prior to making any statements to the agents.

To the extent that Abney claims that he was induced to speak based upon unauthorized promises of leniency, such claim is factually unfounded.  Pelletier testified that Abney indicated during his interview that he had information that would be of interest and asked whether the agents could "help him out."  (Tr. 50).  Lewer responded that he could not make any promises, but that any cooperation Abney provided would be made known to the United States Attorney's office and to the court.  Moreover, according to Pelletier, this exchange occurred at the end of Abney's interview and thus could not have induced Abney's earlier statements.  Accordingly, this Court recommends the denial of Abney's motion to suppress statements based upon a violation of his Fifth Amendment rights.

B.  **Abney Waived his Sixth Amendment Rights:**  Abney further asserts that his statements were obtained in violation of his Sixth Amendment right to counsel.  A defendant's right to counsel under the Sixth Amendment attaches "at the 'initiation of adversary judicial proceedings,' such as the filing of an indictment."  *United States v. Yousef*, 327 F.3d 56, 140 (2d Cir.) (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984); *United States v. Abdi*, 142 F.3d 566, 569 (2d Cir. 1998)), *cert denied*, 124 S. Ct. 353 (2003); *see Fellers v. United States*, 540 U.S. 519, 523 (2004) (Sixth Amendment is "triggered at or after the time that judicial proceedings have been initiated") (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)).  "Once the right has attached, the Sixth Amendment renders inadmissible in the Government's case-in-chief statements elicited by the Government outside the presence of a defendant's counsel that are not accompanied by a waiver of this right."  *United States v. Yousef*, 327 F.3d at

140 (citing *United States v. Henry*, 447 U.S. 264, 273-74 (1980)).  As reiterated recently by the Supreme Court, "[a]n accused is denied 'the basic protections' of the Sixth Amendment 'when there [is] used against him at his trial evidence of his own incriminating words, which federal agents ... deliberately elicited from him after he had been indicted and in the absence of his counsel." *Fellers v. United States*, 540 U.S. at 523 (quoting *Massiah v. United States*, 377 U.S. 201, 206 (1964)).  This Sixth Amendment "deliberate-elicitation" standard is distinguishable from the "custodial-interrogation" standard utilized in a Fifth Amendment analysis.  *Id.* at 524.

It is equally well-established, of course, that a defendant may validly waive his Sixth Amendment rights.  *Patterson v. Illinois*, 487 U.S. 285, 296 (1988) ("As a general matter, then, an accused who is admonished with the warnings prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one"); *Yousef*, 327 F.3d at 140 ("It is settled law, however, that the attachment of the Sixth Amendment right to counsel, by itself, does not preclude a defendant from validly waiving his right to counsel").  If, however, "a defendant invokes his Sixth Amendment right to counsel in a government-initiated interrogation, any subsequent waiver of that right is presumed invalid, even if the waiver is knowing and voluntary." *Yousef*, 327 F.3d at 140.

No question exists that Abney's Sixth Amendment rights had attached at the time of his interview.  The indictment charging Abney was returned and filed on October 28, 2004 (Docket # 1); the arrest and interview occurred over one week later, on November 8, 2004.  (Tr.

4-5).  Accordingly, the sole question before this Court is whether Abney had validly waived his

Sixth Amendment rights prior to making the challenged statements.  I find that he had.

As discussed more fully above, Lewer advised Abney of his constitutional rights

by reading verbatim from an ATF written *Miranda* form.  (Tr. 8, 40; G.Ex. 1).  That form

specifically advised Abney that he had the right to talk to an attorney before questioning and to

have an attorney present.  Abney was also advised that an attorney would be appointed for him if

he could not afford one and that he had the right to stop the questioning at any time if he decided

that he desired the assistance of counsel.  (G.Ex. 1).  Although Abney refused to sign the form,

he verbally indicated to Lewer that he understood his rights and was willing to speak to the

agents concerning the investigation.  (Tr. 10-11, 42-43).  On this record, I find that Abney was

adequately advised of his Sixth Amendment right to counsel and did not invoke such right.

Further, I find that the government has satisfied its burden of demonstrating that Abney

knowingly and voluntarily waived his constitutional rights and agreed to speak with the agents.

*See Yousef*, 327 F.3d at 142 (statements made by defendant after indictment were not obtained in

violation of the Sixth Amendment when the defendant had received *Miranda* warnings, had

voluntarily waived those rights and had not invoked his right to counsel).  Accordingly, it is my

recommendation that Abney's motion to suppress statements on the grounds that they were made

in violation of his Sixth Amendment rights be denied.


## **CONCLUSION**

For the foregoing reasons, it is the Decision and Order of this Court that

defendant's motion for disclosure of the identity of the government's confidential informant

12

**(Docket ## 48, 87)** is **DENIED**.  It is also my Report and Recommendation that defendant's

motion to suppress statements made following his arrest on November 8, 2004 **(Docket ## 48,**

**87)** be **DENIED**.

**IT IS SO ORDERED.**


         *s/Marian W. Payson*
         MARIAN W. PAYSON
         United States Magistrate Judge


Dated:  Rochester, New York
       February  13 , 2006.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>  *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>**Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**</u>

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**


                                                 *s/Marian W. Payson*
                                                 MARIAN W. PAYSON
                                                 United States Magistrate Judge


Dated: Rochester, New York
            February  13 , 2006.

_____

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).